CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Isabel Rose Masanque, Esq., SBN 292673
Sara Gunderson, Esq., SBN 302582
Chris Carson, Esq., SBN 280048
8033 Linda Vista Rd, Suite 200
San Diego, CA 92111
(858) 375-7385; (888) 422-5191 fax
isabelm@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Renato Rico**, | **Case:** 2:19-CV-00271-JFW-SS |
| Plaintiff, | |
| v. | **Plaintiff's Memorandum of Points and Authorities** |
| **Manijeh Tabatabai**, in individual and representative capacity as trustee of The Jahangiri Family Revocable Trust dated October 1, 2002; **Continental Currency Services, Inc**., a California Corporation; and Does 1-10, | Date: November 18, 2019<br>Time: 1:30 p.m.<br>Ctrm: 7A |
| | Hon. Judge John F. Walter |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................ i

TABLE OF AUTHORITIES................................................. ii

MEMORANDUM OF POINTS AND AUTHORITIES ........................ 1

   I.   PRELIMINARY STATEMENT ...................................... 1

   II.  RELEVANT FACTS ................................................ 1

   III.   LEGAL STANDARD................................................ 4

   IV.   THE LACK OF ACCESSIBLE TRANSACTION COUNTERS
   VIOLATES THE ADA............................................. 4

      A.  Plaintiff is Disabled............................................. 6

      B.  Defendant Owns and Operates a Place of Public Accommodation
        6

      C.  The Defendants Discriminated Against Plaintiff on the Basis of
      His Disability ................................................... 7

      D.  The Plaintiff Encountered This Violation and Is Being Deterred
      From Patronage.................................................. 9

   V.   THE LACK OF ACCESSIBLE COUNTERS VIOLATES THE
   UNRUH CIVIL RIGHTS ACT ................................... 9

   VI.   REMEDIES........................................................ 10

   VII.  CONCLUSION................................................... 11

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*

4

  603 F.3d 666 (9th Cir. 2010) ................................................................. 5

5

*Celotex Corp. v. Catrett*

6

  477 U.S. 317 (1986) ............................................................................... 4

7

*Chapman v. Pier 1 Imports (U.S.) Inc.*

8

  631 F.3d 939 (9th Cir. 2011) ............................................................. 5, 7

9

*Cullen v. Netflix, Inc.,*

10

  880 F.Supp.2d 1017 (N.D. Cal. 2012) ................................................... 9

11

*Kohler v. Flava Enterprises, Inc.*, 826 F. Supp. 2d 1221, 1227-28 (S.D.

12

  Cal. 2011) .............................................................................................. 8

13

*Molski v. M.J. Cable, Inc.,*

14

  481 F.3d 724 (9th Cir. 2007) ....................................................... 10, 11

15

**Statutes**

16

17

42 U.S.C. § 12181(7)(C) ........................................................................ 6

18

42 U.S.C. § 12182(b)(2)(A)(ii) .............................................................. 7

19

42 U.S.C. § 12188(a) .............................................................................. 6

20

Cal. Civ. Code § 55.56(a) ..................................................................... 10

21

Cal. Civ. Code § 55.56(b) ..................................................................... 10

22

Cal. Civ. Code § 55.56(e) ..................................................................... 11

23

Civ. Code § 51 (f) ................................................................................... 9

**Other Authorities**

24

25

2010 Standards  §§ 904.4 & 904.4.1 ...................................................... 8

26

28 C.F.R. 36.211(a) ................................................................................ 8

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PRELIMINARY STATEMENT

Plaintiff Renato Rico has sued the defendants in this case for failing to make its lowered transaction counter available to him during his multiple visits to the Continental Currency Services located near his home, resulting in discrimination against him on the basis of his disability. Failing to serve Mr. Rico, a man who uses a wheelchair, at a lower teller window is a violation of the Americans with Disabilities Act of 1990 ("ADA").

Thus, Mr. Rico seeks an order requiring the defendant to maintain its accessible features in such a way as to ensure the lowered counter is available to, and remains useable by, persons with disabilities, including those in wheelchairs. Mr. Rico also seeks a single statutory penalty against each Defendnat for his encounters with this barrier.

## II.   RELEVANT FACTS

Plaintiff Renato Rico is a paraplegic. He cannot walk and uses a wheelchair for mobility. (SUF #1). The Continental Currency Services ('Continental Currency Services') is located at or about 2400 E. Florence Avenue, Huntington Park, California. (SUF #2). Defendant Manijeh Tabatabai, is, and was in December 2018, the owner of the real property on which the Continental Currency Services is located. (SUF #3). Defendant Continental Currency Services, Inc., is, and was in December 2018, the owner and operator of the Continental Currency Service. (SUF #4). The Continental Currency Services is a business establishment and a place of public accommodation. (SUF #5).

1

1    On December 21, 2018, December 28, 2018, December 29, 2018
2    and December 31, 2018 Mr. Rico went to the Continental Currency
3    Services to cash checks and send money. (SUF #6). During each visit, he
4    found that although there were several transaction counter windows,
5    customers were only being helped on one side of the store. The other
6    windows had signs that said "NEXT WINDOW PLEASE." (SUF #7).
7    When it was Mr. Rico's turn to be helped, he approached the transaction
8    counter where he was being summoned by the teller and found that it was
9    too high for his use. (SUF #8). He observed a transaction counter window
10   on the other side of the store that had a lowered writing surface. However,
11   like the other transaction counters on that side, it had a sign that said
12   "NEXT WINDOW PLEASE." (SUF #9). On at least one occasion, Mr.
13   Rico asked the teller helping him if they could use the window with the
14   lowered writing surface but he was told that the window was closed. (SUF
15   #10). Even if Mr. Rico were to have used the counter with the lowered
16   writing surface, he would have still needed to reach up to the higher
17   counter to exchange paperwork and money with the teller. (SUF #11).

18   During his December visits, Mr. Rico was not aware of the
19   existence of a lowered transaction counter where he could be helped. He
20   did not see one anywhere in the store. (SUF #12). During each of Mr.
21   Rico's visits, the person helping him did not inform me or ask him if he
22   wanted to be helped at a lowered counter. (SUF #13). Not having a
23   lowered counter that he could use makes it difficult for Mr. Rico to
24   conduct my transaction because reaching up high causes him to lose his
25   balance. (SUF #14). Not having a lowered writing surface also makes it
26   difficult for him to sign the paperwork for his transaction. (SUF #15).
27
28

Plaintiff's Motion for Summary Judgment                    Case: 2:19-CV-00271-JFW-SS

On January 8, 2019, Evens Louis, an investigator for the plaintiff, conducted an investigation of the Continental Currency Services. (SUF #16). During his investigation, he measured the transaction counters to be 42 inches high. (SUF #17). He observed a lowered section in front of one of the transaction counters. (SUF #18). However, on the date of his investigation, Mr. Louis did not see a teller at the window with the lowered section. (SUF #19).

On July 24, 2019, Plaintiff's expert, Paul Bishop, conducted a site inspection of the Continental Currency Services. (SUF #20). On the day of Mr. Bishop's site inspection, he was shown a lowered transaction counter located behind a secured door. When asked, an employee unlocked the door via a buzzer and allowed them inside. (SUF #21). Beyond the secured door he observed a lowered counter at 30 and ½ inches above the floor. (SUF #22). There was no signage on the outside of this door that indicated an accessible transaction counter was beyond the door or how to reach the accessible transaction counter. (SUF #23). The lowered counter inside this room also did not include a point of sale machine. (SUF #24).

The Continental Currency Services is located just 10 miles away from Mr. Rico's home. It is also in close proximity to other restaurants and places that he frequents around town. Therefore, it is a convenient place for him to cash checks and send money. (SUF #25). Mr. Rico is currently deterred from visiting the Continental Currency Services because of his knowledge of the condition of the counters. (SUF #26). However, he intends to return there once it is represented to him that the barriers have been allegedly removed. (SUF #27).

3

### III.  LEGAL STANDARD

Pursuant to section 56 of the Federal Rules of Civil Procedure, a party can bring a motion for summary judgment where there is no genuine dispute as to any material fact. Motions for summary judgment are not "disfavored." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). In the present case, there can be no genuine dispute over the facts of the case and those facts inform the court and the parties that it would be a waste of judicial resources for this case to proceed to trial. There is no genuine issue of material fact and this court should grant the Plaintiff's motion.

### IV.  THE LACK OF ACCESSIBLE TRANSACTION COUNTERS VIOLATES THE ADA

Under Title III of the Americans With Disabilities Act of 1990 ("ADA"), the general rule is that: "No individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The term "discrimination" can be misleading. The ADA applies not just to intentional discrimination but to thoughtlessness and indifference:

> Its passage was premised on Congress's finding that discrimination against the disabled is most often the product, not of invidious animus, but rather of thoughtlessness and indifference, of benign neglect, and of apathetic attitudes rather than affirmative animus. The concept of "discrimination" under the ADA does not extend only to

4

> obviously exclusionary conduct—such as a sign stating that persons with disabilities are unwelcome or an obstacle course leading to a store's entrance. Rather, the ADA proscribes more subtle forms of discrimination—such as difficult-to-navigate restrooms and hard-to-open doors—that interfere with disabled individuals' "full and equal enjoyment" of places of public accommodation.

*Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944-45 (9th Cir. 2011) (internal quotes and citations removed for readability).

To succeed on his Title III, ADA claim, "a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010). Thus, the following is a simplified statement of the elements necessary for the plaintiff to prove discrimination under this section:

1. Plaintiff must be disabled. 42 U.S.C. § 12182(a);
2. The defendants' facility must be a place of "public accommodation" and, therefore, governed by Title III of the ADA *Id.*;
3. The defendants must be responsible parties, i.e., owners, operators, lessors or lessees. *Id.*;
4. The defendants' facility must have either:

5

a. Undergone an alteration that did not comply with the access standards or contain an easily removed barrier that the defendants failed to remove. 42 U.S.C. §§ 12183(a)(2); 12182(b)(2)(A)(iv); or,

b. Defendant failed to make a reasonable modification of its policies and procedures to accommodate a person with a disability. 42 U.S.C. § 12182(b)(2)(A)(ii).

5. Plaintiff must have actually encountered this non-removed and unlawful barrier. 42 U.S.C. § 12188(a).

As discussed below, Mr. Rico's civil rights were violated because the Defendant failed to make the lowered transaction counter at the Continental Currency Services, on the date of his visits in December 2018. Plaintiff will discuss each element, seriatim.

## A.  Plaintiff is Disabled

Mr. Rico is paraplegic, and uses a wheelchair for mobility. (SUF #1). There can be little doubt that he fits the qualification under the Americans with Disabilities Act as a person with a disability. 42 U.S.C. § 12102(2)(A) (defining a physical impairment substantially affecting a major life activity as qualifying as a disability). Given Mr. Rico's inability to walk, this is not a genuine issue.

## B.  Defendant Owns and Operates a Place of Public Accommodation

The Continental Currency Services is a service establishment. Service establishments are expressly identified under the ADA as places of public accommodation. 42 U.S.C. § 12181(7)(F). Therefore, the

6

Continental Currency Services is a place of public accommodation, which Defendants admit. (SUF #5).  The Defendants owned and operated the Continental Currency Services in December 2018 and so currently. (SUF #3, 4). Therefore, Defendant has an obligation to comply with the anti-discrimination provisions of Title III of the Americans with Disabilities Act.

**C.     The Defendants Discriminated Against Plaintiff on the Basis of His Disability**

The ADA defines "discrimination" as a failure to remove architectural barriers where it is readily achievable to do so. 42 U.S.C. § 12182(b)(2)(A)(iv). "Any element in a facility that does not meet or exceed the requirements set forth in the ADAAG is a barrier to access." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (identifying this as the formal position of the Department of Justice). Discrimination is also defined under the ADA as a "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities…" 42 U.S.C. § 12182(b)(2)(A)(ii).

As outlined below, Defendant discriminated against Mr. Rico by failing to make available the lowered transaction counter during his visits.

**1.     *Defendant Failed to Provide an Accessible Transaction Counter***

In areas used for transactions where counters have cash registers and are provided for the sale or distribution of goods to the public, a lowered portion of the counter must be provided that measures no more

7

36 inches high. 2010 Standards  §§ 904.4 & 904.4.1. However, it is not enough for a business to have an accessible feature. A business must maintain those accessible features in a way that ensures they are made available for use to persons with disabilities. 28 C.F.R. 36.211(a).

Here, a lowered counter apparently exists at the Continental Currency Services. However, it was not made available to Mr. Rico during any of his several visits in December 2018 because the lowered counter is located behind an unmarked and secured door. (SUF #21). There was no signage on the outside of this door that indicated an accessible transaction counter was beyond the door or how to reach the accessible transaction counter. (SUF #12, 23). Mr. Rico was also not informed of this counter or offered this counter.  (SUF #13). Thus, Mr. Rico did not ask to use this lowered counter because he had no idea that it existed. (SUF #12).

Although there was another counter with a lowered writing surface, the transaction itself would have still needed to be conducted at the higher portion of the counter because Mr. Rico would have still had to exchange paper work and money with the teller. (SUF #11). However, even when Mr. Rico asked to use the window with the lowered writing surface— which would indicate that he needed a lowered counter—no one informed him of the lowered transaction counter located behind the locked door. (SUF #10-13).

"A violation of the ADA can occur where a defendant's business is in compliance with ADAAG requirements, but that defendant does not maintain its compliant features in a *useable* manner." *Kohler v. Flava Enterprises, Inc.*, 826 F. Supp. 2d 1221, 1227-28 (S.D. Cal. 2011)(emphasis added). Although there is no requirement for signage indicating the location of the lowered transaction counter under the ADA, the lowered transaction counter was not maintained in a useable manner

since disabled customers are not given any indication of its existence. Having a "secret" lowered counter behind a locked and unmarked door is equivalent to the lowered transaction counter not existing at all.

Thus, because the lowered counter was not made available to Mr. Rico during his visits, the Defendants failed to provide and maintain an accessible transaction counter on the dates of Plaintiff's visits in violation of the law, and directly due to Mr. Rico's disability.

### D.    The Plaintiff Encountered This Violation and Is Being Deterred From Patronage

Not only did Mr. Rico personally encounter this violation, but he faces the threat of continued and repeated violations. The Continental Currency Services is not consistent in providing services and transactions to people in wheelchairs at an accessible, lowered counter. Until the defendant is ordered to maintain its lowered counter in such a way as to regularly provide it to persons in wheelchairs, Mr. Rico will face a continued, ongoing threat of discrimination. Until Defendant is ordered to comply, Plaintiff will continue to be aggrieved by the possibility of recurring discrimination.

### V.   THE LACK OF ACCESSIBLE COUNTERS VIOLATES THE UNRUH CIVIL RIGHTS ACT

The Unruh Civil Rights Act provides that "a violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of this section." Civ. Code § 51 (f).  "A violation of the ADA is, by statutory definition, a violation of both the Unruh Act and the DPA." *Cullen v. Netflix, Inc.*, 880 F.Supp.2d 1017, 1023 (N.D. Cal. 2012). "Because the Unruh Act is coextensive with the ADA and allows

1    for monetary damages, litigants in federal court in California often pair
2    state Unruh Act claims with federal ADA claims." *Molski*, 481 F.3d at 731.
3    As discussed above under section "IV", the defendants violated the ADA.
4    Thus, there has been a per-se violation of Unruh.

6                              **VI.   REMEDIES**

7          The Plaintiff seeks both injunctive relief and statutory damages.
8    Under the ADA, the plaintiff is entitled to injunctive relief. 42 U.S.C. §
9    12188(a). Such injunctive relief "shall include an order to alter facilities
10   to make such facilities readily accessible to and useable by individuals
11   with disabilities" to the extent required by the ADA. *Id.* at 12188(a)(2).
12   Mr. Rico has standing to seek this remedy. "We have found actual or
13   imminent injury sufficient to establish standing where a plaintiff
14   demonstrates an intent to return to the geographic area where the
15   accommodation is located and a desire to visit the accommodation if it
16   were made accessible." *D'Lil v. Best Western Encina Lodge & Suites*, 538
17   F.3d 1031, 1037 (9th Cir. 2008). The Continental Currency Sergices is
18   located just about ten miles away from Mr. Rico's home and is a
19   convenient place for him to cash checks and send money (SUF #25).  He
20   is currently deterred from visiting due to his knowledge of the condition
21   of the counters, but intends to return once it has been represented to him
22   that the barriers have been removed. (SUF #26-27).

23         Statutory damages can be recovered for a violation of the Unruh
24   Civil Rights Act "if the violation denied the plaintiff full and equal access
25   to the place of public accommodation on a particular occasion." Cal. Civ.
26   § 55.56(a). A denial of full and equal access takes place where a plaintiff
27   "personally encountered" the violation and it resulted in "difficulty,
28   discomfort or embarrassment." Cal. Civ. § 55.56(b). Under the Civil Code,

                                          10

the plaintiff is entitled to recover a statutory penalty for "each offense" (Cal. Civ. Code § 52(a)) which has been defined as "each particular occasion that the plaintiff was denied full and equal access . . .." Cal. Civ. Code § 55.56(e). A plaintiff can recover for both actual encounters and occasions where personal knowledge of a barrier deterred the plaintiff from attempting patronage. Cal. Civ. § 55.56(b).

Mr. Rico personally encountered the violation during four separate visits in December 2018. However, Plaintiff seeks only a single statutory penalty against each Defendant. There are no genuine issues in dispute here and Plaintiff is entitled to a statutory award of $8,000 under the Unruh Civil Rights Act for his encounters with the access barriers. "The litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007).

## VII.   CONCLUSION

The Plaintiff respectfully requests this Court grant his motion.


Dated: October 21, 2019          CENTER FOR DISABILITY ACCESS

By: */s/ Isabel Rose Masanque*
Isabel Rose Masanque
Attorneys for Plaintiff

11